Pylor, please call the next case. 212-0876, Lynch Construction Corp. v. Dallas, Illinois. Counsel, you may proceed. Good morning, Your Honors. My name is Valerie Pylor, and I am here on behalf of the employer, Lynch Construction. Also present with me today is Ms. Kelly Moore, Trial Counsel for Lynch Construction. May it please the Court, Counsel. The critical issue in this appeal is the weight to be given to the opinions of a physical therapist regarding an employee's ability to return to work with permanent restrictions. In the clause so far, the Commission relied upon the permanent work restrictions authored by a mere physical therapist as the basis of reward for permanent total disability benefits. You will recall the employee in this case... You're talking about the FCE. Pardon? You're talking about the FCE results. Yes. Right. They relied on the FCE results. Well, they, I would say... They were authored by a mere physical therapist, is what you're saying. Yes. I would say instead that she interpreted the FCE results as opposed to the FCE results themselves because the FCE itself obviously does not measure characteristics such as pain or the ability to work a given number of hours. So the FCE provides functional limitations on items such as lifting, carrying, squatting. But for the critical issue in this case, which is specifically the ability to work only two to three hours per day, that is not something that was measured by the FCE itself. That was added to the FCE interpretation by the physical therapist upon inquiry from counsel for a petitioner. And who should be the appropriate person to make that interpretation and opinion? We would argue, Your Honor, that it should be reviewed by a physician, that permanent restrictions and particularly the impact of work functions on an employee's future health, which is part of what an FCE is designed to determine, what type of work an employee can return to without further endangering his or her health as well as accommodating any limitations resulting from the work injury, that those are inherently medical restrictions. Well, assuming that to be the case, or we would agree with that argument, what about Dr. Zalek? Doesn't he support and buttress the FCEs? What is Zalek saying? There's no question, Your Honor, that there are significant physical limitations and restrictions on the employee in this case. That is not subject of dispute. But if you read the report of the vocational expert for the employee, you will note that the most critical factor upon which she relied was the fact that the employee was only able to work two or three hours per day. And, in fact, she repeats in almost three consecutive paragraphs how significant that time limitation is in context of her ability to work with him in order to find a reasonably stable labor market. What evidence is there in the record that he could work eight hours a day? Dr. Respondent's examining physician, Dr. Zalek, opined after the FCE that, in fact, the two to three hours from the original FCE, because if you recall, there were two FCEs, one in 2007, and Dr. Zalek did review that FCE and did say that he believed the two to three hour work restriction was unnecessary. He did not. Did he render an opinion about how many hours a day he could work? I believe he called it a full work week. I don't believe he put a specific number of hours, but I believe he called it a full work week. What did the claimant testify to? He obviously testified he was limited in his ability to sit and stand for, you know, long periods of time because of knee pain. Did he ever put a specific hours on home? Did the claimant ever address that specifically? I don't, again, think that he quantified it, but I believe he testified that he, again, would only be able to work part-time or less, and that, in fact, there were some indications he did not believe that he could work at all. But certainly he testified subjectively that he did not believe that he could work a full 40-hour week as well. I don't think he put a range, as the therapist did, of only two to three hours. So wasn't there evidence then in the decision or in the commission's decision supported by the evidence? I mean, are we saying that, you know, there's nothing in the record that supports the commission's decision, considering all of the testimony, Zollick, the FCE, and the claimant? Is it clearly against the manifest way of the evidence? I believe it is, Your Honor, for this reason. The vocational expert testified that there was no reasonably stable labor market. Backing up, there are two basic ways, as you know, to prove a permanent odd lot permanent total. The first is a diligent but unsuccessful job search. And I believe that in this case there is no diligent and unsuccessful job search. His testimony was that he looked through the papers and then contacted the 14 employers that respondent's vocational expert provided to him. I believe that does not constitute a diligent and unsuccessful job search. So then we go to the second prong, by age, ability, education, experience. Does this individual, is there a reasonably stable labor market? And respondent's vocational expert did say that, yes, I can find this gentleman a job without the two to three hour restriction. And she identified multiple sedentary restrictions, because those are the restrictions. It's essentially sedentary, with the main element beyond that being the ability to change positions with some frequency. She did say, I can find him jobs, and outlined a number of those positions, some of which even included his prior construction experience. So things like estimators, where perhaps he would be in an office of a construction company, taking phone calls, and able to sit and stand as the phone calls came in, and he was reviewing plans and running estimates, et cetera. By contrast, petitioner's vocational expert made no attempt, because she relied on the two to three hours per week. So the question then, assuming that the job search is not really an issue in the case, the question is whether or not they proved, in light of all of the testimony, that there is no reasonably stable labor market. Did they prove that this gentleman is disabled and has severe restrictions? Absolutely. But they did not prove that there is no reasonably stable labor market. And the reason they did not is because they, again, erroneously relied on the two to three hour restriction that was imposed by the physical When there was an inquiry specifically addressed to her by counsel or petitioner. Well, the vocational experts rendered, by definition, rendering an expert opinion, correct? Correct. And is not the results of an FCE, including that two to three hour work restriction, is that not the type of information that that type of expert can reasonably rely upon in rendering an opinion? I don't believe so, Your Honor, because there is absolutely no explanation in the record as to how that two or three hour limitation came to be. Well, we're talking about Wilson v. Clark, right? I mean, if an FCE is the type of thing that expert can rely on in rendering an opinion, and they render that opinion, that opinion is in evidence, was it challenged in any way? I mean, was there any evidentiary challenge below about whether or not the expert's opinion should be allowed into evidence based upon that two to three hour restriction in the FCE? There was not a Wilson v. Clark challenge, Your Honor, but we did introduce the evidence of Dr. Zolich, who said that that was not appropriate. So the question is, in the whole range of experts, you have a physical therapist conducting a functional capacity evaluation that measures things like lifting, standing, sitting. So it boils down to what you're talking about is the weight to be given this evidence. In other words, you would argue that because this two to three hour restriction was not confirmed by a medical doctor, and only by, as you put it, a mere physical therapist, that that evidence should get less weight. Is that what you're arguing? That is one function. We are also arguing, Your Honor. And if that's the case, then it's up to the commission to decide how much weight to give evidence, correct? But what we're arguing in addition to that, Your Honor, is not so much the expert qualifications, but the sheer medical nature of that kind of restriction of two to three hours. That it is by definition a medical kind of question that requires a physician who can assess what is the impact of working two to three hours per day on this individual's health and upon the injured body part. And I believe that the commission inherently recognizes that because it goes to great lengths to assume that Dr. Sporrer would have agreed with these restrictions. If the commission itself did not believe that these are inherently medical judgments, then why did it spend an entire paragraph inferring and assuming that Dr. Sporrer would in fact agree with these restrictions since he was the one who ordered the FCE? Is there any authority that the commission cannot rely directly on the results reported in an FCE without a doctor saying, I agree with those results? No, Your Honor. This appears to be a question of first impression in the State of Illinois. And that's why I cited to the various other districts as instructive, at least as to other courts' opinions on the value of FCEs themselves and to what degree they can be credited both standing alone and then as interpreted by a physical therapist. And understanding that there is obviously no way binding on this Court, the general consensus has been, I believe one of the courts called it both objective but also inherently subjective because they are limited by things like the petitioner, the employee's report of subjective pain. So generally, the courts have not looked favorably upon taking FCEs as a proof outside of the interpretation by a physician, and they have not even looked that favorably on the interpretation of an FCE by the physical therapist, him or herself. Is it your opinion that the burden never shifted to the employer? It is my opinion that the burden did not shift because all of the proof or petition, all of the opinions on which the employee relied were basically founded on this two to three hour per day work restriction as shown by the voc rehab person's report and both voc rehab person's reports. So if you eliminate that untoward restriction, if you eliminate that improper restriction, what you have is a gentleman who has severe restrictions but whom at least one, well, actually both voc people identified possible job positions for this individual. The employee's own voc person also identified multiple sedentary jobs that she believed he would be able to do. And then she immediately says, but at two to three hours per week in only a part-time capacity, there's no point in even pursuing vocational rehabilitation. If we were to find that the evidence was sufficient to shift the burden back to the employee under the Adelaide theory doctrine, are you agreeing that you really didn't provide, you didn't present any evidence that employment is regularly and continuously available to this claimant? I mean, you're hanging your head in the fear of the burden to be shifted? No, Your Honor. We would say that the labor market survey demonstrated at the very least that there were jobs out there that were available to someone with his restrictions that... And he contacted them, correct? Under the evidence? Didn't he contact the ten employers that you found? Yes. And they did not hire him or offer him an employment, right? That is correct, Your Honor. But if you look at the sequence of these events, this was all happening within a very short period of time. And once the restrictions were interpreted by our IME physician, this matter was taken to trial within literally weeks. And there was no effort to vocationally rehabilitate him because there was no request. And actually, there was literally almost no opportunity. If you look at the sequence of events, our vocational person in April says, we would be able to place him in these jobs. And then there is some reference in her letter to counsel that says, I am awaiting the outcome of this litigation before I continue with my efforts. There's nothing in the record about what that litigation was, but clearly no efforts were made. He then goes to Dr. Sporer, I assume in response to this, so that actual updated restrictions can be obtained by Dr. Sporer. So that's within a month of that letter by my voc person or the voc person retained by the employer to counsel for petitioners saying, let me do this depending on the outcome of this litigation. I'm waiting for you to tell me. Within a month, the employee is at his treating physician. Within another five to six weeks, he's at the FCE. And then within five or six weeks, we're going to trial with no comment by the treating physician. So I believe the burden did not shift partly because the employer was never given the opportunity to shift that burden or to accept shifting of the burden based upon the sequence of events in this case. So because the employee failed to prove either a diligent or unsuccessful job search and because with the inclusion of the erroneous two to three-hour part-time job limitation, he was found to be, the commission erred in relying on that two to three-hour limitation. The commission's decision is contrary to the manifest way that the evidence, and we ask that it be reversed. Counsel, I'm sorry. One question, though, and that relates to the FCE and the two to three-hour work restriction. When that evidence came in through Ms. Staffs, is it Staffsess? I can't pronounce her name, but the vocational expert, was there an objection made as to the lack of foundation or challenging the foundation that Justice Stewart was inquiring about? No, Your Honor, there was not. I generally, in workers' compensation cases, when reports are going in, there's a mutual agreement that each side will not object to the others, and I believe that's what occurred in this case. We agreed not to challenge theirs. They agreed not to challenge ours. Okay. But at this late date, to challenge a basis for an opinion given that perhaps if there was a valid objection to that basis, some other basis could have been presented during evidence, and the claimants foreclosed from having done that now after the fact. So isn't a waiver perhaps involved here? I don't believe so, Your Honor, for this reason. If you look at the transcript at the beginning of the trial, we offered to have, we committed on the record that we would pay for an additional evaluation by Dr. Spore, and we were paying him all of, we were paying the employee all of his benefits at that time. It was not our decision to bring this matter to trial. So to the extent that there was, again, this was all happening in a very short sequence of time. To the extent there was not additional testimony taken and some of these matters explored via deposition or the presence of witnesses, that is partly a function of how this matter came to be litigated in August 2010. Thank you, Your Honors. Thank you, counsel. Counsel, you may respond. Good morning, Justices and counsels. My name is Richard Hannigan. I represent Mr. Minerini. He was injured May 6, 2003, a right knee injury. Subsequently underwent five different surgeries, one meniscus surgery September 03, then a total knee replacement May of 04, second knee replacement September 05, November of 05. He had a manipulation under surgery. The last right knee replacement was January 29, 2007. All knee replacements failed. So there's really no question of the extent of his injury. We don't need to believe that. The fact of the matter is all the doctors, both doctors say that he still needs another knee replacement. So this isn't a fellow that has a back strain and some restrictions. This is a fellow who has a loose prosthesis. He's got aseptic bone. He's got throbbing pain. He has pain all the time. Now we make up our argument that, the crux of our argument, that the commission erroneously relied on this two to three hour a day work. Well, the commission relied upon, first of all, it's not just in the addendum report, two to three hours. It's in the first FCE that was done at a different facility by a different therapist who came to the same conclusion. Now, in the second one, in the body of the FCE, they note that the client stated that his right knee, this is contemporaneous with the visit, is swollen all the time and he has constant 24-7 pain. He reported that his knee pain is increasing dramatically since he has been here and that at present he's been here for an hour and 15 minutes at this time. And then they go on to state and find all of the problems that he is having and that all the things that he can and cannot do. That's not in the addendum. That's in the body of the FCE. It is also consistent with the testimony of the petitioner and the findings of the doctor. And Dr. Zoellick, their doctor, says here are his restrictions, but when it comes to what he can tolerate, we will leave it up to him. Now, this is a fellow who is in front of his computer. If he's sitting for 20 minutes, he's going to be down for a couple hours or a day. When he goes to his class, he could be down for two days. Now, the issue is the credibility of the petitioner. The issue is the credibility of the functional capacity evaluation. The commission found them to be credible. Now to come up with argument about foreign jurisdictions that state that FCEs aren't reliable, I find that to be disingenuous because they didn't object to the FCEs going in and they didn't present any scientific evidence in this jurisdiction, in this case, that would question the efficacy of these FCEs. But notwithstanding the waiver, which you have a right to argue and hang your head on, is this a case of first impression in Illinois? Yes. It is? Well, you know what? It may be the case of first impression in this Court. But I don't think it's the case of first impression at the commission. But it's this Court that decides, not the commission. That was my question. Okay. Yes. Let me miss all that down to the chase here. Are we talking about an error in admissibility or are we talking about weight to be given to admitted evidence? Well, quite honestly, Justice Holder, I don't believe there is any dispute as to the disability. I believe when Dr. Zolich says he can work as tolerated, I don't know exactly what his tolerances are. So he's kind of backed off on that. You've got the arbitrator listening to him saying that. I disagree with the FCE to the extent that I might not be able to work that much. So we've got then the vocational rehabilitation specialist who says this is what he can do. Now, counsel has argued that things were shortened up. Remember, hope against hope, they said Lynch will find him a job being an administrative assistant. We'll work around his problems. So he takes these courses. He's able to do seven courses in two and a half years. And he testifies to the problems and whatnot. He can only do one course at a time. And then I believe in the summer of 2009, Lynch says, I'm sorry, we don't have a position for you. They stop with the education. He's two or three credits short of getting a certificate. But they do nothing after that. So we get a voc assessment. And we get the assessment that says what vocimotive said. And we send it to them. And they still do nothing. And then they get their assessment. I get a letter from their adjuster or their voc person who says here's what we'd like to do. But they never do anything. They don't fill out a form. They don't file anything with 7110.10 that says, you know, we shall work and formulate a voc plan. They don't do it. So we then have a dispute as to voc. They say here's the labor market survey. We go out. We contact everyone. Could be the commission found that their voc assessment was disingenuous because there were jobs on that that were beyond his restrictions. And nobody offered him a job. They didn't comment on it. They comment on the first page that they find that these restrictions preclude him from working. And they find that vocimotive is credible. Now, counsel says there was no way to tell that he can't work an eight-hour day. Well, that July 14th, 2010 report says what he could do after one hour and 15 minutes. Must I run 10 miles and fall down a half a mile to prove I can't run 10? They got to see him during the course of this functional capacity evaluation, and he was shot after an hour and 15 minutes. So how does that translate to the extent where we don't know how he would be if he worked at it for eight hours? I believe that was a valid assessment. Now, the other thing that we should keep in mind is what was in dispute. It was not disputed that the amount of temporary total disability benefits or maintenance or permanent total disability benefits were not paid on the date of the hearing. In fact, the respondent and the petitioner agreed that as of the date of the hearing, he was all paid up. Nothing in dispute there. So the issue then was maintenance, permanent total disability, or maybe the commission should have adopted the vote plan even though they didn't file for the vote plan. Instead, the commission went and found that Vocomotive was more credible than their witness. Now, as I attended a seminar and was advised to cover stuff that would be in their reply, I feel remiss if I don't mention the- In order to get the benefit of the seminar, right? That's correct. I have to give this to him now, okay. I apologize to this Court if I didn't adequately cite pages to the statement of facts. Now, as far as- They argue that I didn't cite where the employer refused to take him back to work. That's true. But the stipulation states between the parties that he wasn't back at work and they were paying temporary total disability benefits. So I apologize for that. They argue that I failed to cite that the failure of the knee replacements on page 4. Well, that was included in Petitioner's Exhibit 6, page 10. The employees may visit, return to the doctor. That was Exhibit 6, page 5. They claimed I did not cite a page for the FCE on page 5 and 6, yet that was cited by both parties. As to Lynch's assertion regarding authorization for follow-up with Dr. Sporer, that is Petitioner's Exhibit 11 and I believe covered on C-13 and 14. As to Lynch reneging on the agreement, that is page C-2226, assuming that I was able to transpose the numbers from your record based upon my transcript. And I know there's no sanction to take it out on me, but I ask that you not punish my client. Thank you. Thank you, Counsel. Counsel, you may reply. Thank you, Your Honors. I would clarify a few things. First, the employer does not assert that FCEs are not reliable. That would be absurd. FCEs are done every day. It is the employer's position that an FCE standing alone cannot be the basis for assessing a million-dollar judgment against an employer. Is that a question of admissibility or a question of weight? In this instance, Your Honor, it is both a question of weight and a question of something approaching the legal impact of the outcome of that. Well, if you're questioning admissibility, you waived it. If you're questioning weight, that's for the commission to decide. Well, as to admissibility, Your Honor, I would point out it's considered a medical record. So it's certified. The employer cannot object to admissibility because it comes in as a medical record. With respect to FCEs themselves, they are simply a series of measurements, oftentimes just resulting from being put into a machine. I would suggest that those machine numbers, those percentages, cannot be considered standing alone without the interpretation of someone who understands the implications of those numbers, most specifically the physician who has to then assess what the impact is. And I believe one of the reasons there is no case law on this is you will never find an FCE entered into evidence without a doctor's opinion. Even the Ameritech case relied on by petitioner in his brief, Dr. Greeson implemented the FCE findings in his restrictions. It is unfathomable, generally, that an FCE would go in standing alone without a doctor to review it and comment on it. And the significance of it is the nature of a doctor's comments on an FCE. I mean, what do they go to? It is a tool that the doctor uses in order to render the final restrictions. So it is not unlike an MRI result. No one would take an MRI result and say, oh, there's a rotator cuff tear. Therefore, without any doctor saying so, petitioner needs surgery. You need the doctor to evaluate the objective findings and turn them into an interpretation of the impact for this specific patient. So what you're saying, now let's go with your analogy further. You're saying that like an MRI, this is equivalent to an MRI that's being interpreted by the technician. Correct. Except at least with an MRI, the technician is generally a radiologist. No, the technician is not a radiologist. Oh, I see what you're saying. Okay. The person who puts you into the... Yes, I understand. ...is not a radiologist. Yes, your point. Yes. I agree with you, Your Honor. So let me ask you a question. So if an MRI comes into evidence and a technician testifies as to what it means, and no one objects to the admissibility of the technician's testimony who determines the weight, the commission? The commission determines the weight. Anybody object to the vocational rehabilitation expert's testimony as to the meaning of the FCE? No. We, again, pursuant to custom and practice at the commission, we let their report in, they let our report in. It is a simple... So now at this point you're only arguing weight because it's come in by custom and tradition without objection. No. What I'm arguing, Your Honor, is that the petitioner failed to meet the burden of proof because the doctor, as opposed to the radiologist or the technician, never interpreted the FCE. But if the technician interprets it and you don't object to the interpretation of the technician on grounds of admissibility, you waive that objection and now the evidence is in as to her opinion and it goes only to weight. So I think you're hoisted on your own petard with your we let things in by custom and usage. You let it in, you're stuck with it. You're stuck with it. You let her testimony in, her reports in? Yes, we did, Your Honor. But then that goes to that is not the only piece of evidence. We're talking about is it contrary to the manifest weight of the evidence. That's really what this case is about, right, manifest weight? Correct. Using the analogy, I have a technician and the person who relied on the technician to say this person can only do part-time work versus a doctor who says, no, that's not what that MRI says. This is what the MRI says. And based upon that, a different person saying, well, then here are all the jobs we can do. I would like to address the idea that my client reneged on the agreement with respect to a job. It's true we did not take him back, but I think everyone is aware of what happened to construction companies between the years 2007 and 2009. So to the extent that there's a suggestion that my client acted in bad faith, I would object to that. And then finally, just to indicate the importance of the two- to three-hour restriction, I would quote the report of Ms. Staffsa, who is the employee's own vocational expert. And she said, with regard to recommendation for vocational rehabilitation services, it is the opinion of this consultant that offering these services would only make sense if Mr. Minnerini was capable of working a greater number of hours per day. So in the sequence of events, this report was generated in 2009, in which she said, he's a perm total, there's nothing that can be done. Petitioner was still treating, and in fact, another surgery had been recommended. There was no reason for the employer to begin vocational services at that point in time, because for all we knew, he was having another surgery. Once it became clear that that surgery was rejected, respondent initiated the process in April of 2010. Then there was some discussion of some kind of litigation, and there was no action taken. And then within a period of about 12 weeks, the new FCE was ordered. Dr. Zola looked at the FCE, and then we went to trial. So the idea that there was ample time for respondent to engage in vocational rehabilitation is not supported by the timeframe in this record, particularly where, as I said, petitioner continued to treat, and we have a complete absence of opinions by Dr. Sporer about whether or not this gentleman should be released to restricted work or not. Dr. Sporer never commented on any restrictions. So it was the employer at this point that had to provide some medical evidence as to the employee's ability to return to work. It was not a case where Dr. Sporer gave restrictions, and so the sequence of events flowed normally. Given the absence of any comment by Dr. Sporer versus the comments by Dr. Zola about the ability to return to work, and given the fact that only the FCE technician, so to speak, is the one putting the two to three hours per day, contrary to a certified board orthopedist, we would respectfully submit that the commission's decision, which relies heavily on an inference that Dr. Sporer himself would have approved of this two to three hour work day, that the commission's reliance on that supposition and assumption supported only by a technician is contrary to the manifest way of the evidence. Thank you, counsel. Thank you, counsel. Both of your arguments in this matter will be taken under advisement. Written dispositions shall issue.